## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRED A. CHAUNCEY and** | : | **CIVIL ACTION** |
| **PATRICIA A. CHAUNCEY** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **NO. 08-cv-4131** |
| | : | |
| **PECO, INC.,** | : | |
| **Defendant** | : | |

## MEMORANDUM

**Stengel, J.**                                                    **February 16, 2010**

In the autumn of 2006, Fred Chauncey was removing leaves from the grounds of Hollyhedge Estates. He was driving a tractor equipped with a "lawn vac," which was designed, manufactured, and sold by defendant Peco, Inc. When he noticed a hose and blower cone had become dislodged from the lawn vac, Mr. Chauncey attempted to retrieve the hose and blower cone and his hand was drawn into the vacuum. He suffered an amputation of his left index finger, and injury to his left middle finger and thumb, and filed this product liability lawsuit. Peco filed a motion for summary judgment. For the reasons set forth below, I will deny the motion.

I.       Background

Fred A. Chauncey was the head of maintenance at Hollyhedge Estate, a bed-and-breakfast in New Hope, Pennsylvania. He was a groundskeeper, and was responsible for keeping the 20 to 26 acre property clear of leaves. Plaintiff's Statement of Material Facts

Which Present Genuine Issues for Trial and Additional Facts Which Preclude Summary Judgment at ¶ 4 [hereinafter Plaintiff's Statement of Facts].

On September 21, 2005, Hollyhedge purchased a grass collection system ("lawn vac") designed, manufactured and sold by defendant Peco, Inc. Defendant, Peco, Inc.'s Statement of Undisputed Facts in Support of Its Motion for Summary Judgment at ¶ 10 [hereinafter Defendant's Statement of Facts]. The lawn vac was retrofitted into a Gravely "Zero Turn" Tractor that had previously been purchased by Hollyhedge. Id.

The lawn vac contains several components. It has a hard plastic "boot" which fits onto the deck of the Gravely tractor. Defendants Statement of Facts at ¶ 11; Plaintiff's Statement of Facts at ¶ 11. A flexible intake hose, approximately three feet in length, is attached to the boot and spans the distance between the boot and the blower cone. Id. The intake hose is affixed to the boot and the blower cone through a hose clamp. Id. The blower cone is fastened to the blower housing, which is a cast aluminum enclosure and houses the rotating impeller. Id. The impeller rotates, cutting the grass, leaves, and other debris, and blowing them upward into the discharge hose. The hose spans the blower housing and collection hopper, which are mounted on the back of the tractor. Id.

On October 26, 2006, as Mr. Chauncey was using the lawn vac, he realized the lawn vac was not picking up the leaves. Plaintiff's Statement of Facts at ¶ 12; Defendants Statement of Facts at ¶13. Mr. Chauncey dismounted the lawn vac, and noticed the lower hose, which still had the blower cone attached, was not attached to the

lawn vac.  Plaintiff's Statement of Facts at ¶ 12.  When Mr. Chauncey reached to pick up the lower hose and blower cone, his left hand was drawn into the rotating impeller blade.  Id.; Defendant's Statement of Facts at ¶17.  Mr. Chauncey suffered a left index finger amputation, and fractures to his left thumb and middle finger.  Plaintiff's Statement of Facts at ¶ 12; Defendant's Statement of Facts at ¶18.

A warning affixed to the lawn vac reads:

Danger
Keep hands and clothes clear!  Rotating Blades!
Do not remove hoses until tractor engine and vac engine
have been completely stopped and turned off.
Excessive vibration may be due to internal blade damage.
Some tractors may require wheel weights.

Defendant, Peco, Inc's Motion for Summary Judgment Pursuant to Fed. R. C. P. 56 at Exh. G.  In addition, the operator's manual states "[s]top unit, shut off deck attachment, set parking brake, shut off mower engine and remove spark plug wire before removing clogs, removing or replacing hose, boot, blower cone, or performing any maintenance."  Id. at Exh. E.  The manual also states the following:

WARNING! NEVER operate the unit unless the discharge guard and either the deflector assembly or the vacuum collector adapter are fastened securely in place.

WARNING! Do not work around the mower deck boot or the blower area until you are certain that the mower blades and the blower impeller have stopped rotating.

WARNING!  To avoid serious injury, perform maintenance on the collector. ONLY AFTER STOPPING THE MOWER"S ENGINE AND WAITING FOR ALL MOVING PARTS TO COME TO A COMPLETE STOP.  Set the

parking brake. Always remove the ignition key before beginning maintenance.

WARNING! For your own personal safety, ALWAYS mow UP and DOWN the face of slopes and NEVER across the face. NEVER attempt to mow excessively step slopes, and use caution when turning on any slope.

Id.[1]

Prior to this accident, Mr. Chauncey had used the lawn vac for the fall months. The blower cone had spontaneously disengaged from the blower housing on approximately six prior occasions. Defendant's Statement of Facts at ¶ 46; Plaintiff's Statement of Facts at ¶ 46. On the prior occasions, Mr. Chauncey reattached the blower cone. Defendant's Statement of Facts at ¶ 48; Plaintiff's Statement of Facts at ¶ 48. Although Mr. Chauncey usually carried a wrench, and would fix the detached blower cone without returning to the shop, on October 26, 2006, he did not have the wrench. Defendant's Statement of Facts at ¶ 49; Plaintiff's Statement of Fact at ¶ 49. He planned on placing the detached hose and blower cone on the deck, and returning to the shop to fix the lawn vac. Defendant's Statement of Facts at ¶ 50; Plaintiff's Statement of Facts at ¶ 50.

---

[1] Mr. Chauncey maintains these warnings did not apply to his action. He also maintains it is unclear which manual was attached to the lawn vac. Plaintiff's Statement of Facts at ¶ 11. Mr. Chauncey cites conflicting testimony from Timothy U'Selis, a sales representative for Betts Equipment Incorporated, and Mr. Peter Hall, President of Peco. Mr. U'Selis, who sold the lawn vac to Hollyhedge, testified the Owner's Manual arrived with the lawn vac. See Plaintiff's Opposition to Defendant's Motion for Summary Judgment at Exh. I at 100:25-103:4, 108:6-109:23, 113:17-116:22 [hereinafter Plaintiff's Opposition]. Mr. Hall testified the operator's manual arrived with the lawn vac. See id. at Exh. F at 53:10-13. Both manuals contain the above warnings, or similar, warnings. See id. at Exh. J, Exh. K.

Peco has sold between 700 and 800 lawn vacs. Plaintiff's Statement of Facts at ¶ 53; Defendant's Statement of Facts at ¶ 58. Peco maintains it has not received any complaints similar to Mr. Chauncey's complaint. Defendant's Statement of Facts at ¶ 55-56, 60. Mr. Chauncey maintains there have been two prior accidents involving operators who suffered amputated fingers after reaching into the discharge end of the blower housing to remove clogs. Plaintiff's Statement of Dispute Facts at ¶ 54. In addition, it maintains Peco's evidence that no prior accidents occurred is not based on proper foundation. Id. Peco relies on the testimony of Mr. Hall, the President of Peco, and Ms. Arunima Dhar, the Chief Operating Officer of Peco. Defendant's Statement of Facts at ¶ 57-58. Mr. Hall and Ms. Dhar's testimony relies on customer comments sent in on warranty cards. Plaintiff's Statement of Dispute Facts at ¶ 54.

Approximately one week after Mr. Chauncey's injury, the blower cone dislodged while another employee was using the lawn vac. The employee did not realize the cone had dislodge, and he ran over the cone, causing it to split into three pieces. Because he did not see "a reason to keep it," Mr. Chauncey discarded the blower cone. See Plaintiff's Response at Exh. A at ¶ 93.

II.    Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" when a reasonable jury could return a verdict for the non-moving party based on the evidence in the record. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" when it could affect the outcome of the case under the governing law. Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must view the evidence in the record in the light most favorable to the non-moving party and draw all

reasonable inferences in favor of that party.  <u>Anderson</u>, 477 U.S. at 255.  The court must

decide not whether the evidence unmistakably favors one side or the other, but whether a

fair-minded jury could return a verdict for the plaintiff on the evidence presented.  <u>Id.</u> at

252.  If the non-moving party has produced more than a "mere scintilla of evidence"

demonstrating a genuine issue of material fact, then the court may not credit the moving

party's version of events against the opponent, even if the quantity of the moving party's

evidence far outweighs that of its opponent.  <u>Big Apple BMW, Inc. v. BMW of N. Am.,</u>

<u>Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).


III.     <u>Whether the Lawn Vac was Unreasonably Dangerous</u>

     Strict liability allows recovery where a plaintiff is injured by a defective product

that is "unreasonably dangerous."  <u>Moyer v. Dominion</u>, 473 F.3d 532, 538 (3d Cir. 2007).

Whether a product is "unreasonably dangerous" is a question of law to be determined by

the Court.  <u>Id.</u>; <u>accord</u> <u>Surace v. Caterpillar, Inc.</u>, 111 F.3d 1039, 1042 (3d Cir. 1997).

The trial judge must "decide whether, under [the] plaintiff's averments of the facts,

recovery would be justified."  <u>Donoughe v. Lincoln Elec. Co.</u>, 936 A.2d 52, 66 (Pa.

Super. Ct. 2007) (quoting <u>Phillips</u>, 665 A.2d at 1171 n.1) (alteration in original);

<u>Azzarello v. Black Bros. Co., Inc.</u>, 391 A.2d 1020, 1026 (Pa. 1978).  Only if the facts

survive this inquiry is the case submitted to a jury to determine whether the facts support

the averments.  <u>Azzarello</u>, 391 A.2d at 1026.

To determine whether a product is unreasonably dangerous, a trial judge must engage in a risk-utility analysis to weigh the products' harms against its social utility. Surace, 111 F.3d at 1044-1046. The court should weigh the following factors:

> (1) The usefulness and desirability of the product-its utility to the user and to the public as a whole; (2) The safety aspects of the product-the likelihood that it will cause injury, and the probable seriousness of the injury; (3) The availability of a substitute product which would meet the same need and not be as unsafe; (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) The user's ability to avoid danger by the exercise of care in the use of the product; (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instruction; and (7) The feasibility, on the part of the manufacturer, of spreading the loss of [sic] setting the price of the product or carrying liability insurance.

Id. at 1046 (quoting Dambacher v. Mallis, 485 A.2d 408, 423 n.5 (Pa. Super. Ct. 1984) (overruled on other grounds)).

Taking the plaintiff's averments as true, Mr. Chauncey has sufficiently pled the lawn tractor was unreasonably dangerous. See Plaintiff's Opposition at Exh. B. Exh. C, and Exh. D (plaintiff expert states three alternate designs which will not decrease utility); id. at Exh. B at 3; id. at Exh. D at 198:17-19 (maintaining Mr. Chauncey was not near the blade, rather his hand was sucked in). Therefore, a jury should determine whether the product "left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for its intended use." Azzarello, 391 A.2d at 1027.

IV.    Assumption of Risk

In design defect and failure to warn product liability cases, assumption of risk is a complete defense.  Lonon v. Pep Boys, Manny, Moe & Jack, 538 A.2d 22, 25 (Pa. Super. Ct. 1988).  "[T]o prevail on an assumption of the risk defense, the defendant must show 'that the plaintiff knew of the defect and voluntarily and unreasonably proceeded to use the product.'"  Wagner v. Firestone Tire & Rubber Co., 890 F.2d 652, 657 (3d Cir. 1989) (quoting Lonon, 538 A.2d at 25); Staymates, 527 A.2d 1040, 1046 (Pa. Super. Ct. 1987).

A genuine issue of material fact exists as to whether Mr. Chauncey "knew of the defect and voluntarily and unreasonably proceeded to use the product."  At his deposition, Mr. Chauncey stated the blower cone had disengaged from the blower housing on six prior occasions, he understood the blower housing could draw items in, and understood the implications of his failure to heed the warnings.  Memorandum of Law in Support of Defendant, Peco, Inc.'s Motion for Summary Judgment at Exh. F at 157-159 [hereinafter Defendant's Memorandum].  However, at his deposition, Mr. Chauncey also stated he knew the impeller was spinning, but he "wasn't trying to attach" the cone.  He "was trying to pick this hose up, and set it on the mower, and go to the shop, because [he] didn't have the tools" to repair the lawn vac with him.  Plaintiff's Opposition at Exh. D at 147:21-148:13, 149:10-150:10.

A genuine issue of material fact exists concerning what facts Mr. Chauncey was aware, and whether he believed, his conduct was placing him in danger.  Whether Mr.

Chauncey was subjectively aware of the risk is a question of fact for the jury to decide.

See Lonon, 538 A.2d at 25 (quoting Staymates, 527 A.2d at 146).  Accordingly, Peco's

summary judgment motion regarding Peco's assumption of the risk defense will be

denied.[2]


V.      Failure to Warn

A product can be "'defective' for strict liability purposes if it is distributed without

sufficient warnings to notify the ultimate user of the dangers inherent in the product."

 Mackowick v. Westinghouse Elec. Corp., 575 A.2d 100, 102 (Pa. 1990) (quoting Sherk

v. Daisy-Heddon, Etc., 540 A.2d 615 (1982)).  "A warning of inherent dangers is

sufficient if it adequately notifies the intended user of the unobvious dangers inherent in

the product."  Id. (emphasis deleted).  "[W]hether a warning is adequate and whether a

product is 'defective' due to inadequate warnings are questions of law to answered by the

---

[2] If an employee "is required to use equipment as furnished by the employer," an
assumption of the risk defense is not available.  Jara v. Rexworks, Inc., 718 A.2d 788,
796 (Pa. Super. Ct. 1998).  Mr. Chauncey used the lawn vac during the course of his
employment.  Therefore, although he knew the cone continued to dislodge from the lawn
vac, Mr. Chauncey argues the assumption of the risk defense cannot apply because his
employer required him to use the equipment to perform his duties.

However, although Mr. Chauncey used the lawn vac during the course of
employment, it is unclear whether  the employer required him to use the equipment.
Other lawn care products, including backpack leaf blowers and push behind unit leaf
blowers were on the premises, and it appears Mr. Chauncey's employer did not have a
preference as to which equipment Mr. Chauncey used to care for the lawn.  Reply
Memorandum of Law in Further Support of Defendant, Peco, Inc.'s Motion for
Summary Judgment at Exh. M at 22, 54-7.

trial judge." Id. at 102. The trial judge must "decide whether, under the plaintiff's averment of the facts, recovery would be justified." Id. (quoting Azzarello, 391 A.2d at 1026). Only if recovery would be justified, is the case "submitted to the jury to determine whether the facts of the case support the averments of complaint." Mackowick, 575 A.2d at 103 (quoting Azzarello, 391 A.2d at 1026).

The lawn vac contained warnings, including a warning to keep hands and clothes clear of rotating blades and to not remove the hose until the engine has stopped. Defendant's Motion at Exh. C, E. Mr. Chauncey maintains Peco's warnings are insufficient because they only warned against detaching the hose. See Plaintiff's Memorandum of Law in Support of Opposition to Defendant's Motion for Summary Judgment at 18-19. The warnings did not address Mr. Chauncey's actions, i.e., placing the displaced cone on the mower deck. Id.

Peco argues Mr. Chauncey failed to present sufficient evidence of inadequate warnings because Mr. Chauncey's expert refused to criticize the warnings, and Mr. Chauncey failed to establish inadequate warnings were "both a cause-in-fact and the proximate cause of the injuries." See Defendant's Memorandum at 16-18.

Although Mr. Chauncey did state he was aware of the lawn vac's warnings, see Defendant's Motion at Exh. F at 132-136, 150, 156-57, he also stated he did not believe his conduct fell within those warnings, see id. at 147-48. Moreover, although Mr. Chauncey's expert did not state an opinion on the warnings, he did state Mr. Chauncey's

conduct was foreseeable, and stated he refused to give an opinion on the warnings because warnings are a "last line of defense" in product safety. Defendant's Reply at Exh. N at 183, 1.2-1.15

Mr. Chauncey has provided sufficient evidence to maintain a duty to warn strict liability action, and the jury should determine whether the lawn vac was defective because of inadequate warnings.


VI.  <u>Negligence Claim</u>

To prevail on a negligence claim, a plaintiff must establish: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the applicable standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting. <u>Griggs v. BIC Corp.</u>, 981 F.2d 1429, 1434 (3d Cir. 1992).

Peco argues it does not owe a duty to Mr. Chauncey because a reasonable person would not have foreseen the likelihood of harm to Mr. Chauncey. Memorandum of Law in Support of Defendant, Peco, Inc.'s Motion for Summary Judgment at 18 (citing <u>Monahan</u>, 856 F. Supp. at 965).[3] In addition, it argues, even if the risk was foreseeable, it

---

[3]  In <u>Monahan</u>, the United States District Court for the Eastern District of Pennsylvania, granted defendant's motion for summary judgment. The court noted the lawn tractor at issue resulted in an estimate 75 deaths per year, which was one death for every 102,000 riding mowers. <u>Monahan</u>, 586 F. Supp. at 966. The court then noted the defendant had chosen its design, not plaintiffs, based on safety and utility, not cost. <u>Id.</u>

was not an unreasonable risk pursuant to a risk-utility analysis.  Id. at 19.

Mr. Chauncey's expert maintains the risk was foreseeable.  See Plaintiff's Opposition at Exh. B at 3.  In addition, the benefits of the lawn vac do not outweigh its possible harm, especially considering Mr. Chauncey's claim that inexpensive, easy alternatives are available which would not hinder the lawn vac's utility.

Peco next argues Mr. Chauncey's negligence was the sole cause of the injury, and, therefore, its summary judgment motion on the negligence claim should be granted.  Peco's Memorandum of Law at 19.  Although Mr. Chauncey's negligence may have contributed to his injury, Peco does not present sufficient evidence to establish Mr. Chauncey's negligence was the sole cause.  Rather, a genuine issue of material fact exists as to whether Mr. Chauncey was negligent, and whether his negligence was greater than Peco's, or the sole cause of his injury.

I will deny Peco's summary judgment motion on the negligence claim.


VII.   Breach of Warranty

"An implied warranty of merchantability arises by operation of law and serves to protect buyers from loss where the goods purchased are below commercial standards." Hornberger v. General Motors Corp., 929 F. Supp. 884, 887-88 (E.D. Pa. 1996) (citing

---

The court found the defendant's interest in safety and utility outweighed the low probability of death.  Id.  Unlike Monahan, Peco presented no evidence it chose its design, rather than the Mr. Chauncey's alternatives, based on safety and utility.

Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992)).  An implied warranty can be disclaimed or modified.  Id. at 888.  "[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous."  13 Pa. Cons. Stat. Ann. § 2316(b).  To determine whether a warranty has been disclaimed, courts evaluate whether the disclaimers were in writing and were conspicuous.  Borden, Inc. v. Advent Ink Co., 701 A.2d 255, 258-59 (Pa. Super. Ct. 1997).  Conspicuousness is a question of law, and "[t]he test is whether a reasonable person against whom the modification or exclusion is to operate ought to have noticed it."  Hornberger, 929 F. Supp. at 889 (quoting Thermo King Corp. v. Strick Corp., 467 F. Supp. 75, 77 (W.D. Pa. 1979)).  To determine whether a reasonable person would have noticed a warranty disclaimer, courts consider the following factors: "(1) the placement of the clause in the document; (2) the size of the disclaimer's print; and (3) whether the disclaimer was highlighted or called to the reader's attention by being in all caps or a different type style or color."  Id. (quoting Moreno, 643 So.2d at 333).

The Operator's Manual supplied with the lawn vac contains a page labeled, "PECO Limited Liability Warranty for New Products."  The page reads:

**NO REPRESENTATIONS ADDITIONAL WARRANTIES, DISCLAIMER.**
Neither PECO, Inc. Nor any company affiliated with it makes any warranties, representations or promises as to the quality of performance of its products other than those set forth herein.  Except as described above, PECO, Inc. makes no other warranties **AND SPECIFICALLY DISCLAIMS ANY AND**

**ALL IMPLIED WARRANTIES OF FITNESS AND MERCHANTABILITY**.

Defendant's Motion at Exh. E (emphasis in original).[4]  It is unclear, however, whether Hollyhedge was provided the operating manual or the owner's manual.  The owner's manual does not disclaim the implied warranty of merchantability.  Plaintiff's Opposition at Exh. J at 11.  It merely states, in regular type, that Peco makes no "warranties, representations or promises as to the quality or performance of its products other than those set forth herein."  Id.

A genuine issue of material fact exists regarding which manual Hollyhedge received with their lawn vac.  See Plaintiff's Opposition at Exh. I at 100:25-103:4, 108:6-109:23, 113:17-116:22; Plaintiff's Opposition at Exh. F at 53:10-13.  The manuals contain different language when discussing the warranties which apply to the product.  See Plaintiff's Opposition at Exh. J; Plaintiff's Opposition at Exh. K.  Therefore, I will deny Peco's summary judgment motion because a genuine issue of material fact exists, and judgment as a matter of law is not appropriate.[5]

---

[4]  This clause was on page 4 the operator's manual, and was included in the manual's discussion of the warranties.  Peco highlighted and called attention to the disclaimer by placing the disclaimer in all capital letters, and in bold.  Accordingly, if this manual was received, the implied warranty of merchantability likely would have been disclaimed.  See Hornberger, 929 F. Supp. at 889.

[5]  Mr. Chauncey argues he should not be bound by the contractual limitations because he was not the purchaser of the lawn vac.  See Plaintiff's Memorandum at 20.  In addition, he argues Mr. Chauncey had not read, received, or reviewed the manual.  Id. Anyone injured by the defective product may sue for a breach of an implied warranty. Kagan v. Harley Davidson, Inc., 2008 WL 1815308, at *9 (E.D. Pa. Apr. 22, 2008)

VIII.  Spoliation of the Evidence

Peco argues it is entitled to summary judgment as a matter of law as a sanction for Mr. Chauncey's spoliation of the evidence.

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.  Paramount v. Pictures Corp. v. Davis, 234 F.R.D. 102, 110 (E.D. Pa. 2005) (quoting Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd., 348 F. Supp. 2d 332, 3535 (D.N.J. 2004)).  A party who "reasonably anticipates litigation has an affirmative duty to preserve relevant evidence."  Howell v. Maytag, 168 F.R.D. 502, 505 (M.D. Pa. 1996) (citing Baliotis v. McNeil, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994)).

Sanctions for spoliation of the evidence include:  "(1) dismissal of a claim or granting judgment in favor of a prejudiced party; (2) suppression of evidence; (3) an adverse inference, referred to as the spoliation inference; (4) fines; [and] (5) attorneys' fees and costs."  Paramount Pictures Corp., 234 F.R.D. at 110 (quoting Mosaid Techs., Inc., 348 F. Supp. 2d at 335).  When considering the imposition of sanctions, courts balance the following factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3)

_____

(quoting Goodman v. PPG Indus., Inc., 849 A.2d 1239, 1246 (Pa. Super. Ct. 2004)). However, because the warranty disclaimer was received by Hollyhedge, the purchaser of the lawn vac, and there is no evidence Hollyhedge was a mere conduit to another purchaser, the implied warranty would be disclaimed if defendant proved a reasonable person would have noticed the disclaimer.  See Kagan, 2008 WL 1815308, at *9 n.18.

whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Paramount Pictures Corp., 234 F.R.D. at 111 (Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994)).

A duty to preserve evidence arises where "(1) the [party] knows that litigation . . . is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial to the [other party]." Creazzo v. Medtronic, Inc., 903 A.2d 24, 29 (Pa. Super. Ct. 2006) (quoting Mount Olivet Tabernacle Church v. Edwin L. Wiegand Div., 781 A.2d 1263, 1270-71 (Pa. Super. Ct. 2001)). To determine the degree of fault of the party who altered or destroyed the evidence, a court must consider "two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith." Creazzo, 903 A.2d at 29 (citing Mount Olivet Tabernacle Church, 781 A.2d at 1270.

Mr. Chauncey did discard relevant evidence when he threw out the allegedly defective blower cone. However, Mr. Chauncey threw the blower cone out after the cone detached while another employee was using the lawn vac, and that employee ran the blower cone over, breaking it into three pieces. This occurred one week after Mr. Chauncey's accident. Mr. Chauncey had not yet contacted a lawyer, no lawsuit was pending, and Mr. Chauncey threw the cone pieces away because he "had no reason to keep them." See Plaintiff's Response at Exh. A at ¶ 93.

Dismissal of a claim based on spoliation of the evidence is an extreme sanction, Thompson v. WCAB, 781 A.2d 1146, 1149 n.4 (Pa. 2001), and is to be used as a last resort, Baliotis, 870 F. Supp. at 1289.  Mr. Chauncey had not contemplated a lawsuit at the time he discarded the blower cone, and did not act in bad faith.

I will deny summary judgment based on spoliation of the evidence.

An appropriate order follows.